AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 15- 126-UNA
Cellular Telephone Number (225) 810-8043, )
ESN: 089361434200598569 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* See Attachment "A"
This Court possesses the authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.
located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
  ☐ evidence of a crime;
  ☐ contraband, fruits of crime, or other items illegally possessed;
  ☒ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of controlled substances |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.
☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

William Tanner Jenkins, Task Force Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/23/2015

*Judge's signature*

City and state: Baton Rouge, LA          Stephen C. Riedlinger, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, William Tanner Jenkins, being first duly sworn, hereby depose and state as follows:

I make this Affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 225-810-8043, ESN 089361434200598569, the service provider is Sprint, subscriber of the subject phone is a prepaid customer located at 18196 Pinehurst Drive, Prairieville, Louisiana 70769, who has been active since December 21, 2009 (hereinafter "**Target Telephone.**")   The subject phone is believed to be used by **Adam PASQUA**.  The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

I am a Task Force Agent with the Drug Enforcement Administration (DEA) currently assigned to the DEA Baton Rouge Resident Office (BRRO) Group 20. I have been assigned to DEA Group 20 since January 2, 2014.  Prior to my assignment on the DEA Group 20 task force, I was a Narcotics Agent for the East Baton Rouge Sheriff's Office where I have been employed since February 2007.  As a DEA Task Force Agent, I conducted numerous investigations of unlawful drug distribution in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846, and conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, acting in an undercover capacity, the execution of search warrants, debriefings of cooperating sources and reviews of taped conversations and drug records. Through my training, education and experience, I became familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such

drugs. In addition, I have conducted, in connection with these and other cases, follow up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

I participated in investigations involving the interception of wire communications devices and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and of digital display paging devices and their use of numerical codes and code words to conduct their transactions. Also during these investigations, I reviewed and interpreted thousands of conversations related to the distribution of methamphetamine and other controlled substances.

The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 (a)(1) and 846 have been committed, are being committed, and will be committed by Adam PASQUA. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

This application arises from a multi-agency investigation targeting a methamphetamine trafficking organization based in Baton Rouge, Louisiana led by Adam PASQUA.

On October 30, 2015, your affiant and TFA Scott Courrege debriefed a reliable cooperating source, hereinafter referred to as the CS. The CS has provided information to DEA since August 2015. The CS worked in an undercover capacity at the direction of agents and officers, and conducted the negotiations of, and the controlled purchases of, illegal drugs resulting in the arrests of several cocaine traffickers. To your affiant's knowledge, the CS never provided misleading or incorrect information to any DEA agent. To the extent possible, the information provided by the CS was corroborated by independent investigation and your affiant believes the information provided by the CS about the PASQUA organization is credible and reliable.

During the debriefing, the CS identified PASQUA as the leader of a methamphetamine trafficking organization based in Baton Rouge, Louisiana. According to the CS, PASQUA is obtaining approximately 12 to 18 ounces of methamphetamine from an unknown methamphetamine source of supply (SOS) on a weekly basis. The CS stated that PASQUA rents a room at the L'auberge Hotel and Casino, 777 L'auberge Avenue, Baton Rouge, Louisiana, and uses the room as his resupply location. An administrative subpoena served on L'auberge Hotel and Casino shows that, on October 30, 2015, PASQUA rented a hotel room at L'auberge and listed an additional occupant as Randall BROWN. As a listed occupant, BROWN would be authorized to pick up his own room key. Your Affiant knows from his training and experience that sophisticated narcotics traffickers will often times conduct what is referred to as "dead drops." A "dead drop" is when subjects do not meet face to face for a

3

narcotics transaction. This is done to deter detection by law enforcement and make it difficult to conduct physical surveillance on both parties.

On October 30, 2015, at approximately 11:59 a.m., the CS received an incoming call from the **Target Telephone** at which time PASQUA stated that his methamphetamine SOS had not yet arrived in Baton Rouge to re-supply PASQUA. During this telephone conversation, agents were conducting surveillance on PASQUA and observed PASQUA inside the L'auberge Casino. Approximately one hour later, during a subsequent telephone call, PASQUA stated to the CS that the methamphetamine SOS would not be arriving in Baton Rouge to meet PASQUA at the L'auberge Casino for the resupply for another two to three hours.

At approximately, 8:45 p.m., PASQUA stated to the CS that he was resupplied by his methamphetamine SOS and was ready to sell CS seven grams of methamphetamine that CS had previously requested. The CS and PASQUA agreed to meet at a car wash in the vicinity of Gardere Lane in Baton Rouge.

At approximately, 8:55 p.m., the CS and the CS's vehicle were searched by your Affiant and TFA Courrege.

At approximately, 9:02 p.m., followed by TFA Jenkins, the CS departed the BRRO to meet PASQUA.

At approximately, 9:27 p.m., your Affiant observed the CS arrive at the car wash on Gardere Lane in Baton Rouge, Louisiana.

At approximately, 9:30 p.m., the CS contacted PASQUA and PASQUA stated that he would meet the CS at 9147 Ridge Oak Drive, Baton Rouge, Louisiana. CS drove to the address, followed by TFA Jenkins.

4

At approximately, 9:33 p.m., TFA Courrege observed the CS arrive at 9147 Ridge Oak Drive and exit the CS's vehicle.

At approximately, 9:36 p.m., TFA Courrege observed PASQUA arrive at 9147 Ridge Oak Drive, driving a black G-37 Infiniti bearing Louisiana license plate YRP 344 (this vehicle is registered to Adam PASQUA). TFA Courrege observed PASQUA exit the vehicle and meet with the CS in the parking lot.

At approximately 9:43 p.m., TFA Courrege observed the CS exit 9147 Ridge Oak Drive and drive to a pre-designated meet location with agents.

At approximately 9:50 p.m., TFA Courrege and TFA Jenkins met with the CS and the CS relinquished a quantity of suspected methamphetamine to TFA Jenkins. TFA Courrege and TFA Jenkins searched the CS and the CS's vehicle and found no contraband.

Furthermore, only after spending a few minutes in the hotel room and moments before driving to meet the CS for the abovementioned methamphetamine transaction, L'auberge video surveillance showed PASQUA exit the hotel with a book bag.

On November 8, 2015, at approximately 4:01 p.m., the CS at the direction of TFA Jenkins called PASQUA on the **Target Telephone**. During the telephone call the following dialog transpired:

> CS – "What you doing buddy?"
> PASQUA – "Talking on the wrong phone."
> CS – "Oh."
> PASQUA – "You want me to call you from it?"
> CS – "Yea call me from it."

Based on training and experience, Affiant believes PASQUA states to CS that he does not want to talk about illegal activity on the **Target Telephone**. Instead, PASQUA wants to use an alternate cellular telephone that he uses to talk about narcotics transactions.

5

At approximately 4:06 p.m., the CS received an incoming call from PASQUA on telephone number 504-699-5682, International Mobile Subscriber Identity (IMSI) 310120119416869. During the telephone call PASQUA stated: "I'm straight" and "It's really pretty." Based on training and experience, Affiant believes that PASQUA states to CS that he has received methamphetamine from his SOS and that the methamphetamine is good quality.

On November 22, 2015 the CS advised your Affiant that CS spoke to PASQUA on the **Target Telephone** and agreed to meet PASQUA at PASQUA's residence. Upon arriving at the residence, CS observed PASQUA possess approximately three ounces of methamphetamine. The CS further stated that PASQUA was currently utilizing the Target Telephone to discuss his methamphetamine sales, because PASQUA's other cell phone was out of service.

Based on the facts detailed above your affiant has probable cause to believe that PASQUA is utilizing the **Target Telephone** to facilitate the distribution of amounts of methamphetamine.

Your affiant knows that Sprint is a company that provides cellular telephone access to the general public. Your affiant knows providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers

6

covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

Based on training and experience, your affiant knows SPRINT can collect E-911 Phase II data about the location of the **Target Telephone**, by initiating a signal to determine the location of the **Target Telephone** on SPRINT network or with such other reference points as may be reasonably available.

Based on training and experience, your affiant knows SPRINT can collect cell-site data about the **Target Telephone**.

In light of the evidence described above, the location information sought for the **Target Telephone** will assist agents in identifying the Atlanta based methamphetamine SOS location before, during and after PASQUA's methamphetamine resupply. This information, in conjunction with traditional law enforcement investigative methods, such as physical and video surveillance, will allow agents to fully identify the methods of the PASQUA operation.

## AUTHORIZATION REQUEST

Based on the foregoing, your affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c),

Your affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There

is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

Your affiant further requests that the Court direct SPRINT to disclose to the government any information described in Attachment B that is within the possession, custody, or control of SPRINT. Your affiant also requests that the Court direct SPRINT to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with SPRINT services, including by initiating a signal to determine the location of the **Target Telephone** on SPRINT network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

Your affiant furthers requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of

daytime hours.

Your affiant further requests that the Court order that all papers in support of this application, including the Affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize this investigation.

_____
WILLIAM TANNER JENKINS
TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 23rd day of November, 2015, at Baton Rouge, Louisiana.

_____
STEPHEN C. RIEDLINGER
United States Magistrate Judge
Middle District of Louisiana

9

# ATTACHMENT A

## Property to Be Searched

1. Cellular telephone assigned call number 225-810-8043, ESN 089361434200598569, the service provider is Sprint, subscriber of the subject phone is a prepaid customer located at 18196 Pinehurst Drive, Prairieville, Louisiana 70769, who has been active since December 21, 2009 (hereinafter "**Target Telephone**.") The subject phone is believed to be used by **Adam PASQUA**.

2. The location of the **Target Telephone** is believed to be in the Middle District of Louisiana.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SPRINT, SPRINT is required to disclose the Location Information to the government. In addition, SPRINT must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the **Target Telephone** on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Cellular Telephone Number (225) 810-8043,<br>ESN: 089361434200598569 | )<br>)<br>)   Case No.  15-126-UNA<br>)<br>)<br>) |

### SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

This Court possesses the authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before  12/7/2015   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Stephen C. Riedlinger_____
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  11/23/2015 2:30 pm      *(signature) Stephen C. Riedlinger*
                                                                    *Judge's signature*

City and state:     Baton Rouge, LA                          Stephen C. Riedlinger, U.S. Magistrate Judge
                                                                    *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return |||
|---|---|---|
| Case No.: 15- | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Cellular telephone assigned call number 225-810-8043, ESN 089361434200598569, the service provider is Sprint, subscriber of the subject phone is a prepaid customer located at 18196 Pinehurst Drive, Prairieville, Louisiana 70769, who has been active since December 21, 2009 (hereinafter "**Target Telephone**.") The subject phone is believed to be used by **Adam PASQUA**.

2. The location of the **Target Telephone** is believed to be in the Middle District of Louisiana.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SPRINT, SPRINT is required to disclose the Location Information to the government. In addition, SPRINT must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the **Target Telephone** on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).